NATHAN RUBIN, Appellant and Respondent, *v.* DAIRYMEN'S LEAGUE CO-OPERATIVE ASSOCIATION, INC., Respondent and Appellant.

Argued May 28, 1940; decided October 8, 1940.

34

*Lawrence E. Brinn* and *Jacob Aks* for plaintiff, appellant and respondent.

*John F. X. Finn, Lazarus I. Levine, Gerald G. Hogan* and *Seward A. Miller* for defendant, respondent and appellant.

LEWIS, J. The action is in equity. The plaintiff demands of the defendant an accounting for commissions alleged to have been earned under an oral contract by which the plaintiff agreed to develop certain territory as a market for the defendant's milk products in consideration for which the defendant was to designate him as its exclusive distributing agent within such territory and pay him as commissions one-half cent for each quart of milk and one and one-quarter cents for each quart of cream sold therein.

Cross-appeals have been taken by leave of the Appellate Division from its order affirming an interlocutory judgment

which directed the defendant to account for sales made by the plaintiff during the contract period which has been decreed to have terminated on April 9, 1935. Having denied the existence of the oral contract pleaded by the plaintiff, the defendant challenges upon this appeal so much of the order affirming the interlocutory judgment as directs it to account for commissions upon sales made by the plaintiff prior to April 9, 1935. The appeal by the plaintiff requires us to review only that part of the order which denies him an accounting by the defendant for commissions on sales made subsequent to that date.

In granting leave to appeal the Appellate Division has certified for each appellant a separate set of questions. For the plaintiff the questions certified are:

" 1. Where a verbal agreement was entered into between the plaintiff and the defendant whereby the plaintiff agreed to develop the sale of the defendant's products in the Towns of Thompson, Fallsburg and Bethel in the County of Sullivan and the defendant granted to the plaintiff in consideration thereof the exclusive agency for the sale of such products in such towns and agreed to pay to the plaintiff in connection therewith a commission of one-half cent a quart for all milk sold and one and one-quarter cent per quart for all cream so sold and such agreement was to continue in effect so long as defendant sold its products in such territory and the plaintiff fully performed said agreement on his part, did the defendant so long as it continued to sell its products in the said territory developed by the plaintiff, have the right to terminate the contract on April 9, 1935 and not allow plaintiff commissions beyond that date?

" 2. Was the agreement terminated by the defendant on April 9, 1935 by virtue of the letter sent that date, Defendant's Exhibit I?

" 3. Does the plaintiff have the right to an accounting up to the date of the trial? "

For the defendant the following questions are certified:

" 1. Is there evidence in the record to sustain the finding that the contract set forth in Question No. 1 as certified for the plaintiff, was entered into?

" 2. If there is evidence in the record to sustain such a finding, is the contract legal and enforceable? "

Upon the trial a jury was impaneled by Special Term to render an advisory verdict upon the issue of fact whether the oral contract alleged by the plaintiff was made. Without analyzing the vast amount of evidence presented upon that issue, it is enough for present purposes to state that we find in the record sufficient evidence to justify the adoption by Special Term of the jury's finding that the contract was made substantially as pleaded by the plaintiff, subject, however, to the qualifying fact set forth in the additional finding made by Special Term that such contract was terminated on April 9, 1935.

We are told in support of the defendant's position that the plaintiff's alleged promise " to open up and develop " the territory within the townships of Thompson, Fallsburg and Bethel in Sullivan county as a market for the defendant's milk products was so illusory and indefinite as to be unenforceable. It is also said that, if an exchange did occur of a promise by the defendant " to pay " certain commissions for a promise by the plaintiff " to open up and develop " certain territory, such an exchange of promises was of no legal consequence because it was " lacking in mutuality." Such an argument disregards the rule that " Even when the obligation of a unilateral promise is suspended for want of mutuality at its inception, still, upon performance by the promisee a consideration arises ' which relates back to the making of the promise, and it becomes obligatory.' " (*Grossman* v. *Schenker*, 206 N. Y. 466, 468.)

The record proof is not sufficient to warrant our conclusion as matter of law that there was such an exchange of promises between the parties as would support a contract by which the plaintiff agreed " to open up and develop " the prescribed territory and therein to act as defendant's exclusive agent for a definite term in return for commissions

to be paid by the defendant upon sales thus made. Upon the question of duration of the arrangement between the parties the courts below have ruled, upon evidence which we regard as sufficient, that the contract was "unilateral as to time." We treat that phrase as referring to an agency cancelable at will — an arrangement not unlike that which was considered in *Winslow* v. *Mayo* (123 App. Div. 758; affd., 195 N. Y. 551), of which it was said (p. 762): " * * * the agency was one at will, and might be terminated by either party upon the payment by the defendant of any commissions which had been earned up to the time that notice of termination was given." (See, also, *Martin* v. *New York Life Ins. Co.*, 148 N. Y. 117, 121; *Willcox & Gibbs Sewing Machine Co.* v. *Ewing*, 141 U. S. 627; *Schnerb* v. *Caterpillar Tractor Co.*, 43 Fed. Rep. [2d] 920, 921; certiorari denied, 282 U. S. 898; 89 A. L. R. 252, 258.)

We cannot go behind the finding of fact by Special Term that the agreement was " unilateral as to time and could be terminated by either party at any time." From this fact it follows that the defendant could not have required the plaintiff to proceed " to open up and develop " the prescribed territory. There is an abundance of proof, however, that, after preliminary conferences between the plaintiff and representatives of the defendant which gave rise to the agreement which Special Term has found existed, the plaintiff made persistent efforts to create in the three townships a market for the defendant's products. Those efforts by the plaintiff, which were known to the defendant and received its co-operation, contributed to a marked increase over a period of years in the defendant's local sales. They constituted performance by the plaintiff in response to the defendant's promise and thus gave rise to a consideration which relates back to the time of, and makes obligatory, the defendant's original promise. (*Grossman* v. *Schenker*, *supra*, p. 468.) There is eminent authority for the statement that " * * * a promise that was originally too indefinite, may by performance become definite and as the other party to the bargain must be regarded as con-

tinuously assenting to receive such performance in return for his own promise, a valid unilateral contract arises on receipt of such performance." (1 Williston on The Law of Contracts [Rev. ed.], p. 366, § 106.)

We may not consider the grievance asserted by the defendant that by the present action the plaintiff claims commissions, based upon his sale of defendant's milk products, in excess of certain retail profits, price differentials and rebates which he has received from the defendant during the period of years terminating April 9, 1935, during which time — as it has been found — the plaintiff performed his contractual duty to the defendant. In that connection, however, it may be said that " ' If a person chooses to make an extravagant promise for an inadequate consideration it is his own affair.' [8 Holdsworth, History of English Law, p. 17.] " (*Allegheny College* v. *National Chautauqua County Bank*, 246 N. Y. 369, 377.)

We are thus led to conclude that upon performance by the plaintiff up to April 9, 1935, the defendant became obligated to pay commissions earned by the plaintiff to that date through his efforts.

Passing to a consideration of the ruling at Special Term as to the date upon which the contract was terminated, it appears from the record that on April 4, 1935, a prearranged meeting was held at the defendant's office in New York city, attended by the plaintiff and several representatives of the defendant, for the purpose of conference upon plaintiff's claim for commissions. Thereafter a letter dated April 9, 1935, was received by the plaintiff from the defendant which, after stating — without prejudice to its rights in the matter — a basis which had been proposed for the settlement of the controversy, closed with the following paragraph: " We believe you gathered from the conference of April 4th and that you should have realized from previous conferences that we do not recognize any right on your part to such commissions, but if there is any doubt in your mind on this point, please accept this as our formal advice to you to such effect and govern yourself accordingly."

On the date of that letter and over a period of years then past, the arrangement existing between the parties had been the subject of performance by both parties. Each had benefited by acts, within their respective obligations, performed by the other. But the obligation assumed by the plaintiff did not require of him that he continue longer than he desired to supply the facilities necessary to market the defendant's milk products within the prescribed territory and to exert his efforts to increase their sales therein. He could withdraw at any time as the defendant's distributor and cease his efforts in the defendant's behalf. (*Winslow* v. *Mayo, supra.*) Nor did the fact that his efforts had resulted in developing in the three townships a market beneficial to the defendant's interests insure to the plaintiff a continuance of performance by the defendant while the plaintiff's efforts continued. We agree with the ruling at Special Term that in the circumstances either party had the right to terminate the contract. The defendant did so on April 9, 1935, by the letter quoted above.

But plaintiff asserts that his acceptance of an exclusive agency bound him to a continuing duty to develop the territory, and that, therefore, the defendant had no right to cancel the arrangement between them. (*Wood* v. *Duff-Gordon*, 222 N. Y. 88.) Whether the plaintiff did assume such a duty is not for this court to determine. That item of the alleged contract was the subject of proof. The arrangements between the parties were oral. Upon ample evidence the courts below have concluded that the plaintiff assumed no such duty. In any event, plaintiff is in no position to urge in this court the failure of defendant to perform after April 9, 1935, in view of the finding of fact by Special Term that there had been no performance by the plaintiff after that date under the contract which he alleges.

Upon the appeal of the plaintiff, the order should be affirmed, without costs. Of the three questions certified for the plaintiff the first should not be answered; the second

should be answered in the affirmative; the third should be answered in the negative. The two questions certified for the defendant by the Appellate Division should not be answered. We leave unanswered three of the questions mentioned above upon the ground that answers thereto will not determine the correctness of the decision here for review. It follows that the plaintiff's motion to dismiss the defendant's appeal should be granted, without costs, on the ground that the questions certified are not decisive, and the defendant's motion to dismiss the plaintiff's appeal should be denied, without costs. (*Matter of Teller*, 223 N. Y. 565; *Turner* v. *Edison Storage Battery Co.*, 248 N. Y. 73, 75; and see Cohen, Powers of New York Court of Appeals, p. 233.)

LOUGHRAN, FINCH, RIPPEY and CONWAY, JJ., concur; LEHMAN, Ch. J., and SEARS, J., vote to answer all questions.

Ordered accordingly. (See 284 N. Y. 816.)